SAMUEL WILBUR *vs.* THE BOWDITCH MUTUAL FIRE IN-
SURANCE COMPANY.

If a by-law of a mutual fire insurance company provides that "the policy shall be void, unless the true title of the insured be expressed in the application," a representation that the property belongs solely to the insured, when in fact it was partly owned by another person, avoids the policy.

In such a case, if the application represents the property to be unincumbered, when in fact it has been sold for non-payment of taxes, it is a misrepresentation, and avoids the policy, although a right of redemption still remained in the insured; for by the sale the purchaser has a lien on the estate for the price paid, with ten per cent. interest and costs.

Such misrepresentations avoid such a policy, although not made with a knowledge of their falsity, nor with an intent to deceive.

ASSUMPSIT on a policy of insurance for $1,000 on the plaintiff's "standing wood on lots 11, 14, 15, 16, and 17, in the 6th great lot in Plymouth woods."

At the trial in the court of common pleas before *Bishop, J.* it appeared from the plaintiff's application for insurance that he requested insurance on his standing wood in the lots above enumerated, the value of which he represented as $1,500. In answer to a question in the application, whether there was any incumbrance upon the property, he answered "No," and that no other circumstances existed material to the risk. And he also expressly covenanted that the statements in his application formed a "just, full, and true exposition of all the facts and circumstances in regard to the condition, situation, value, and risk of the property," and he agreed to be bound by the act of incorporation and by-laws of the company. Sections seventeen and nineteen of the by-laws provided that "any

policy should be void unless the true title of the assured be expressed in the application for insurance: " and that " the applicant for insurance shall make a true representation of the property on which he requests insurance so far as concerns the risk and value thereof and of his title and interest therein." The plaintiff admitted that at the time of effecting the insurance, he owned but half of the eleventh, all the fourteenth and fifteenth, one fourth of the sixteenth, and one half the seventeenth lots.

The defendants, in order to show that the property was incumbered in a manner not disclosed in the application, offered to prove that the eleventh share had been sold for taxes, subject to redemption, to one Jacob Jackson, by the collector of Plymouth, April 10, 1847, before the policy was made ; to which the plaintiff objected as immaterial, and the judge excluded the testimony.   The defendants also contended that the property was fraudulently overvalued by the plaintiff in his application for insurance ; and to maintain this defence, produced evidence to show that the actual value of the property was less than stated in the policy.   There was no evidence by either party, besides the valuation, and the proved value of the property, tending to show whether the valuation was or not fraudulent.   Thereupon the defendants requested the judge to instruct the jury :

1. That the application and policy in this case were for insurance on the whole of the wood on the several lots named in it; and if the plaintiff owned only undivided fractions of the property, such an interest would not be that which the plaintiff asked to have insured, nor which the defendants undertook to insure, and the policy was void from the beginning.

2. That as the plaintiff now claims that he owned at the time of insurance but half of the eleventh, one fourth of the sixteenth, one half of the seventeenth, and all the fourteenth and fifteenth lots, such an interest in the insured property is not that which the defendants undertook to insure, and the jury should find for the defendants.

3. That if the plaintiff, in making the application for in-

surance, grossly overvalued the property, and stated the value to be far above what he believed it was really worth, such overvaluation is evidence of fraud, which, if unexplained, renders the policy void.

But the judge instructed the jury, that if the representations in the application for insurance were false, and known by the plaintiff to be so, and the defendants relied upon them as true, and were induced by them to take a risk which they would not have taken had the truth been told them, the policy contract is void; but if the policy was procured in entire good faith, if there was no intent to deceive, if the plaintiff had a substantial interest, then the overvaluation, whatever it may be, is unimportant. And the burden to prove fraud, beyond a reasonable doubt, is on the defendants, to be proved by evidence; and that the presumption of fraud from any overvaluation, might be rebutted by other evidence. The verdict being for the plaintiff, the defendants excepted to the aforesaid rulings.

*C. B. Farnsworth,* for the defendants.

*C. I. Reed,* (*H. G. O. Colby* with him,) for the plaintiff.

SHAW, C. J. A verdict in the present case having been returned for the plaintiff, several exceptions were taken by the defendants, and have now been submitted to the court, a part of which only we have found it necessary to consider.

One ground of defence is, the misrepresentation of the assured, at the time the insurance was effected, as to his title to the property, and the extent of his interest therein; as to the value of that interest, and as to any incumbrance on it. The policy was upon standing wood in the 6th Great Lot, in Plymouth woods. The policy, which is for four years, is in terms made subject to the charter and by-laws of the corporation, a mutual insurance company, under the laws of this commonwealth. The by-laws, annexed to the policy, art. 17 and 19, state that any policy issued by the company shall be void, unless the true title of the assured be expressed in the proposal or application for insurance; and that he shall make a true representation of the property, so far as it concerns the risk, and value thereof, and of his title and interest therein.

These are important provisions, and from the manner in which they are introduced, they are embraced in the policy and form a constituent part of the contract. The representation in regard to title, has been supposed to apply especially to the case of mutual companies, and to be made specially with reference to the consideration, that in mutual offices, the company have by law a *lien* on the estate insured, for the security of their premium and deposit. This consideration, no doubt, adds to the importance of having a true representation of title ; but it has been recently held, that even when there is no such *lien,* the representation is material, and being stipulated for, as part of the contract, it must be complied with, and because it is a part of the contract. This applies *a fortiori* when the policy is made with a mutual company. *Davenport* v. *New England Mutual Fire Insurance Company,* 6 Cush. 340.

The main principle, that these representations are made pursuant to the charter and by-laws, that it is a stipulation on the part of the assured, a part of the contract that they are true and correct, and that the company may rely upon them, and that this must be taken to be material because the parties have made them so by the contract, has been so fully established by several very recent cases, that it is unnecessary to do more than cite them. *Smith* v. *Bowditch Mutual Fire Insurance Company,* 6 Cush. 448; *Vose* v. *Eagle Life & Health Insurance Company,* 6 Cush. 42; *Barrett* v. *Union Mutual Fire Insurance Company,* 7 Cush. 175. Reports of these cases were not published when this action was tried. Then, what are the facts disclosed by the report? The insurance is upon growing wood, in the 11th, 14th, 15th, 16th, and 17th shares in the 6th Great Lot. In the application, examined critically, the plaintiff requests insurance on the property described ; not upon *his* property. But if he does not mean to say by implication, that it was his, then there is no statement whatever as to title, and the application is defective on that ground. But the policy, and it is that on which he claims, insures it as his standing wood, which renders it conclusive, and no argument is raised on this point. It was, therefore, a representation that it was his property, and in answer to direct questions, he stated

38 *

that it was not incumbered, and that no other circumstances existed material to the risk. By the bill of exceptions it appears that at the time the policy was made, the plaintiff owned but half of the 11th, all the 14th and 15th, one quarter of the 16th, and one half of the 17th. Here there was a clear misrepresentation, in regard to title ; that the whole was his ; whereas in two shares he owned a half only, and in one a quarter only. It was also a misrepresentation of value ; the representation was that the whole was worth $1,500, upon which he obtained the maximum of insurance, $1,000 ; whereas the insurance only existed as far as his title extended, including about half of the whole.

But further ; the defendants offered to show, by way of defence, that the 11th share had been sold for taxes, subject to redemption, to one Jacob Jackson, by the collector of taxes, to which the plaintiff objected, as immaterial, and it was rejected. If this was relied on to prove that the assured had no insurable interest, it could not avail; because, though an estate is deeply incumbered, the party having a right to redeem, has an insurable interest. *Strong* v. *The Manufacturers' Insurance Company,* 10 Pick. 40. If it was intended to show that such sale was an alienation, which put an end to the policy as to that lot, we think it would not avail, so long as the plaintiff had a right of redemption. For a levy of execution, still redeemable, is not an alienation. *Clark* v. *New England Mutual Fire Insurance Company,* 6 Cush. 342. But after a sale for taxes, the purchaser had a *lien* on the estate for his reimbursement, with ten per cent. interest, and costs, and it could only be redeemed by paying these sums. To put the most favorable construction upon it, for the assured, it affected the title, and constituted an incumbrance, and in both views was a misrepresentation, and the court are of opinion that this evidence should have been admitted.

On the point of misrepresentation, the court instructed the jury, in substance, that to avoid the policy, the representations must have been known to the plaintiff to be false, and must have been made with an intent to deceive ; which instruction, as applicable to the facts of this case, was incorrect.

*Exceptions sustained ; New trial in this court.*